Our next case has one party appearing by Zoom, so we'll take a little time to get  a little bit of time to step around the corner real quick, do I have time to visit the facilities before we start? Certainly. Cardinale, correct me if I'm mispronouncing that, but Cardinale v. City of Atlanta, Mr. Cardinale, you will begin. Can you hear us okay? Yes, thank you, thank you. Can you hear me also? Yes, thank you. Thank you. Good morning, your honors. What an extraordinary opportunity today to present as the appellant in this matter. As stated in my brief, this case is at the intersection of free speech and elections integrity. Because we as candidates come to be very familiar with the problems with the conduct of our elections, and it is crucial wherever possible that we be able to discuss our experiences as candidates with the problems with our elections and to petition our government for a redress of grievances regarding their conduct of the elections, especially at the very time when public pressure to act is highest, and that's when the election cycle is underway. And I am so thankful to the many other Atlanta candidates who joined the amicus brief to that effect. The City of Atlanta by Charter Section 2-303D and ordinance allows any member of the public to be heard by making public comments in a portion of its council meetings and committee meetings. Code Section 2-104, quote, any member of the public may speak to the council on matters of public concern, including matters of general policy efficiency and the conduct of city government. While matters of public concern is already quite broad, I provided the lower court with three affidavits that the city council does not in practice enforce any relevance requirement at its council meetings. I have a question for you, backing up. What type of forum do you think that the city council meetings are? Yes. So I actually believe it depends on which case we're looking at. But under the four-part scheme in Barrett, which is what the U.S. District Court used, I believe it is a designated public forum. But in all your pleadings and briefs, you said it was a limited forum. There's only one place, which was in a SIR reply, where I said that it was a limited forum. And I was basing that on... I thought you had stipulated that. No, no, Your Honor. That is not a stipulated fact. That is not in the statements of material fact. That was not stipulated at all. That was something I stated, and I was relying on two cases specifically, where they only have three types of forum and not four, and where the second type is actually called limited. And the first one there is Cornelius, and that's 473 U.S. 817. And they say the second category, which we have referred to as limited public forum, consists primarily of government property, which the government has opened for use as a place for expressive activity for a limited amount of time. And the second case was in Perry, where there are also three types of fora and not four types. And that second type is a public property, which the state has opened up for use by the public as a place for expressive activity, 460 U.S. at 46 and 47, footnote 7. And in that footnote 7, in Perry, the court says that that type could be limited. So I specifically have stated that the city of Atlanta does not enforce any relevance requirement and practice, that it has no interest, that it has no genuine interest. I attached the affidavits. And so under a designated public forum versus limited under Barrett, there are two key differences. One, which is whether the forum is open to anybody to speak versus a limited class of speakers or set of speakers. And then the second is whether the subject matter is limited. And I have consistently argued and the record, there's no genuine dispute that it's open to anybody to speak under the charter and the code. And as far as the subject matters in full counsel, I read a couple minutes ago to the court matters of public concern, how broad that already is. And zero times in the last 15 years, I've got three affidavits that a council president has never said. Excuse me, Mr. Speaker, but your comments are irrelevant. They're not matters of public concern. And there's one speaker who repeatedly talks about a dispute that she has with a man living in her basement that has no clear connection to public concern. She's never been interrupted. And I argued consistently that this is, again, not a genuine interest. All right. I actually use the word sincerely. I said that there might be a government out there, unlike Atlanta, that sincerely cares about relevance. And that was document 126-1, page 10. To be sure in this matter, plaintiff has questioned whether defendant sincerely possesses an interest in relevance by members of the public, given the fact that they literally do nothing to advance the interest except reportedly to have the policy at issue in this matter. And even if the city of Atlanta sincerely possessed such an interest, which it does not, and that's 126-1, pages 13 and 14. So it would be a designated public forum because it's open to everyone. And in reality, there's no limit on what you can talk about. And this is important because the standard is for designated public forum. And that's in, that's actually in a case, excuse me, Pleasant Grove. Pleasant Grove says the government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum. And what those are also stated in Pleasant Grove, narrowly tailored to serve a compelling government interest. So that would be a compelling government interest. I actually argue that there is no sincere government interest. So it doesn't matter if it needs to be compelling or reasonable. I also, under no matter what standard the court uses from the alternatives presented, that there has to be narrow tailoring. And there's three options for narrow tailoring, which I'll get to in a minute, that the court never addressed. Actually, the district court categorically approached local government meetings, whether school board or city council meetings, in the 11th Circuit as limited fora. And the quote, that's... I'm going to quote you from Judge Thunberg's order. She says that in your surrepli, and I think you alluded to this, Mr. Carnell states that he agrees that the Atlanta City Council meetings and council committee meetings are limited public fora. And she cites your surrepli, which you referred to. But is Judge Thunberg wrong when she says in the district court you agree, for purposes of her ruling, which we're now reviewing, that it was a limited public fora? Again, that was not a stipulated fact. That was not in the statement. I agree with you. It's not a stipulated fact. But her assessment... Yes, it was stated in the surrepli. Let me try to say my question. I'm just going with what Judge Thunberg says because she's pretty careful about these things. She says you agreed in the district court before her. I don't know how she found what it was that was the agreement, but she agreed. And you're saying that's erroneous, what she says in her order. That is correct, Your Honor. She's relying on the surrepli, which I've already addressed. And when I use the word limited forum, I didn't cite any specific case. And I had in mind two cases where there's only three types of forum, not four. There is no designated forum in those schemes. I've just cited those to you, Cornelius and Perry, and where the second type was called a limited forum. So because the... Okay, you've answered my question. You're saying Judge Thunberg's wrong in what she states there. Yes. Okay, thank you. Let's say, setting aside whether or not you have agreed before or agree now that it's a limited public forum, let's assume just for the purposes of this question that we think it is. It's not a concession to accept that assumption. Didn't the Supreme Court say in Perry that the standard for restrictions in a limited public forum was that the body could reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view? Isn't that what we know the standard is for limited public forums, Fora? For limited public forum and not designated public forum, yes. And again, I argue that there is no reasonable interest. There is no interest actually at all. The interest that they said that they have in relevance they don't actually enforce, which is something that Judge Totenberg did not address. And there also still has to be narrow tailoring. Well, but based on the standard that I just read you, I don't see where that says narrow tailoring. Just a second. It says reasonable and not a viewpoint restriction. I have a list of cases here. I don't have the quotes in front of me. I'd like to just give you the list of what I'm relying on here. I think we've probably got that from your brief. So you don't need to list those cases. What about, so let's say, assume that I'm right that that's the standard from Perry. Isn't it possible that you could have a different result on your facial challenge versus your as applied challenge? There's an argument, I would say, that it's reasonable of the city council not to want to be basically an election forum for every candidate to come in and talk about how they're a candidate and give their platform speech at every meeting. Isn't that reasonable? No, it's not reasonable because once the forum has been opened up to everybody and for all subject matters, then you can't start picking and choosing. And the stated purpose of the forum is matters of public concern. And we're not talking about campaigning here. The district court agreed, Your Honor, that I was not actually trying to campaign. And actually, she found that my comments were, in fact, relevant. She worried that someone else would, in fact, respond to my relevant comments with potentially irrelevant comments, which means that my rights are going to be deprived based on somebody else who may or may not have their rights deprived. I think we've got your argument and you'll reserve your three minutes for rebuttal. Okay, thank you. Mr. Ash, you've got 15 minutes. Am I permitted to have a water bottle at the podium? I know how Justice Hines felt about it. Sure, that's fine. Thank you. May it please the Court, I'm Robbie Ash here today on behalf of the City of Atlanta. I'm joined by my colleague, Matthew Sellers, and our colleague, Austin Holloman. The City of Atlanta has chosen to permit limited public comment at its council meetings and its full council committee meetings. Those public comment periods are under well-established Eleventh Circuit precedent, limited public forum. I'm going to start with the Court's questions to appellant about waiver, because I think that's actually dispositive of this. We believe the trial court's opinion was correctly decided, but certainly the issue of whether this was a designated forum rather than a limited public forum was never argued to the trial court. So whether it is an issue of stipulation or affirmative statement that it is a limited public forum, and frankly, the record demonstrates that it was. Your opposing counsel, though, he's not wrong that we have been less than clear. I think Judge Grant is absolutely correct about what Perry states, but we have been less than clear in what the appropriate test is for a limited public forum. And if you look at Crowder, for example, or Roe, for example, a limited public forum in those contexts does apply narrow tailoring, right? Sure. Is that a yes or a no? Yes. Okay. So if your counsel thought, in his head, he said, yes, it's a limited public forum because that has the same test as designated public forum, and that isn't an implausible point based on our case law, what are we talking about here? Limited public forum and designated public forum aren't the same in Roe. They weren't the same in Cornelius. They weren't the same in Kokenda. Do you agree with me that we in Crowder and Roe applied narrow tailoring to, or said at least, that narrow tailoring applies to limited public forum? Yes. Okay. The more recent 11th Circuit cases on limited public forum have made clear that that's not the standard. Now, I agree, but our prior panel precedent rule to the extent that it's a holding in those prior cases would bind us to apply the earlier, not the later cases. I don't believe that it was necessary to the outcome of any of those cases. The test to apply is not necessary? That the narrow tailoring versus what the Supreme Court has announced is the – it has to – and the court – this court recognized in both Keister and Barrett is the rule from the Supreme Court, which is in a limited public forum, content-based moderation, which is what we have here. Let me be clear. I agree Keister and Barrett got it right, that that should have been what it is, but that's not my question. My question is, we have cases that have said and seems to have applied a different test based on what may be a misunderstanding of what Perry said. And we, as a later panel, where there was a conflict between two cases in our circuit, are required to go through the earlier – to apply the earlier holding. I think this would be an opportunity if the court finds that there is a necessary conflict. And again, I think Waiver sidesteps this. But this would be an opportunity for the court to bring its prior cases in line. The problem is – and I apologize for interrupting – I don't think Waiver does sidestep it because even if I accept – and I'm only speaking for myself. Sure. Even if I accept that the – I have never contested or I've never denied language, which is the language that Judge Totenberg was relying on from the surreply, which is page 2 of the surreply, that even if I accept that as a concession, we still have the issue of what is the test for a limited public forum. Sure. That's the question we're asking. That's really the case. That's the issue here. Okay. Okay. For sake of argument, he does say plaintiff has never denied, just as Judge Gluck says, that limited public forums continue to exist or that the council meetings are limited public forums. That's pretty as explicit as it gets. But that doesn't get us very far because, unfortunately, we have cases, row and crowd, that say one thing. Then we have other cases that say another test, the reasonableness and viewpoint, and they don't refer to each other. The later cases don't address how they got there. We have this conflict in our precedent that's not dealing with each other. Sure. The conflict is over narrowly tailoring and compelling interest versus the other. So there we are. I don't believe compelling interest is used in row. Forget about what the tests are, but we have a conflict in the two tests. Before I leave the waiver point, and I promise I will go to you, let me say that it was also in Appellant's motion for summary judgment where he said, Read does not in any way announce a limit in its applicability to only traditional public forums, nor does it say it is inapplicable to limited public forums, such as the Atlanta City Council meeting. It's not just the CERA plot. I don't see how the waiver, quote unquote waiver, matters to the issue that we're talking about. The real issue is what is the appropriate test under our case law? Is the answer, I'm going to posit an answer to you and I want your view on it. Sure. Is the answer that intervening between Crowder and Rowe and these later cases was the Supreme Court case of Christian Legal Society versus Martinez. And there the court not only applied the test that Judge Hull just articulated, which is reasonableness and not viewpoint neutral, but seemed to reject narrow tailoring. And I'll read the relevant portion from there, which is at page 692 of the opinion. CLS, which is the Christian Legal Society, nevertheless deems Hastings' all comers policy frankly absurd. There can be no diversity of viewpoints in a forum, it asserts, if groups are not permitted to form around viewpoints. This catchphrase confuses CLS's preferred policy with constitutional limitation. The advisability of the policy does not control its permissibility. Quote, instead, we have repeatedly stressed that a state's restriction on access to a limited public forum need not be the most reasonable or the only reasonable limitation. Is that an abrogation of applying narrow tailoring such that we would say that we would not be controlled by the earlier cases? I believe it is. And the point I would make is that exact quote, the piece that Supreme Court case was quoting, it quotes Kokinda, quoting in turn Cornelius. It quotes Cornelius, right. Yeah, Cornelius is the origination. But the Supreme Court likes that formulation so much they've repeated it a couple times, as this court did in Barrett. So this court has since Cleveland, which was an unpublished opinion, but then in Blodorn v. Grobe, dealing with the Georgia Southern campus directly on point with Keister, the University of Alabama campus. We won't mention any SEC rivalries here. Then moving to Dyer and Barrett, which are the more recent cases. The consistent statement of the law as to the standard applied to a limited public forum is that content-based moderation, which we have here, is permissible as long as it is reasonable to needs of the forum, which this is, and it is viewpoint neutral, which this is, because it applies to both sides equally. It applies to the person standing at the podium. It also applies to the incumbent city council members sitting on the other side of the dais. And doesn't Perry deal with two different types of restrictions? One was the content-neutral time, place, and manner restriction, which set out the standard necessary to serve a compelling state interest and narrowly drawn to achieve that end. But then Perry also said that for a limited public forum, the state may, in addition to time, place, and manner regulations, reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression. So Perry set out two different standards for two different contexts, right? I think that's correct. Yes, Your Honor. And wasn't Roe a content-neutral time, place, and manner standard related to residency of the speaker? It was, although if we're being precise. I mean, I think there's an argument to be made that the residency of the speaker isn't really time, place, and manner. It's really an equal protection challenge, which is what Roe, how Roe dealt with it. But the idea of limiting the public comment to only being issues before the City Council, Roe held that that was the time, place, and manner restriction. It's what Cleveland built on in suggesting that prohibiting campaigning at City Council meetings was permissible under the Court's precedent. I think that certainly Kokenda, Cornelius have made it very clear that the risk of political disruption, as this Court recognized in Barrett, as this Court recognized in Keister, that is both a reasonable concern for the government, and that prohibiting campaigning is a reasonable way of dealing, of prohibiting it. So my answer to your question is I think Roe was correctly decided at the time. I think there are also both the Supreme Court's cases since 2004. Well, frankly, Cornelius, I suppose, was 1985. Kokenda was 1990. It's why you have to look at Martinez and Pleasant Grove, because those are the only posed Roe. I mean, that's part of the problem is even if we have law which says if we have unmentioned Supreme Court case law and yet hold contrary to that, we interpret that, there's no sort of silent subjection to the prior panel precedent rule. So we need something in between, it would seem to me, to intervene unless we can distinguish those earlier cases from this one. I think that's the problem that you have with whether narrow tailoring applies here or not, because if it does, I think you run into some problems. Well, I think the restriction that the city, so we'll talk about that because it's relevant whether we're talking about reasonableness, although that's obviously an easier test, or we're talking about narrow tailoring. I think what the city has done here is actually a relatively simple and neat way of communicating in advance a restriction that prohibits much campaign-related activity, but does so in a way that does not rely on a minute-by-minute assessment by the presiding officer about whether something is too political. Also, there are lots of other channels for the desired speech. The appellant was told in writing that he was not prohibited from standing up and saying, I am a former candidate, and during my prior campaign, these were the concerns. He was also told that he could submit, as he does, his comments and his viewpoints to the city council via email. So there are lots of other ways, which is what the Supreme Court focused on in Kokenda and in Cornelius. In Kokenda particularly, and frankly ISCON as well, the case about the Hare Krishnas in the New York City airports, is the availability of the alternative channels for distributing that message. They helped demonstrate to the court that the restrictions that were being imposed were permissible, because really what we're talking about and what the Supreme Court has continued to— What prohibits electioneering and what is proffered to be the comments here? I mean, it is overbroad. I don't know that there's any other way to look at it. Saying you cannot mention the word candidacy to prohibit electioneering, which is essentially what the rationale and justification is, is overbroad because it prohibits valid comments on things that have absolutely nothing to do with electioneering. It does not prohibit any of the other comments. It only prohibits to say, I am—you can say, I am Robbie Ash. I believe in God and the American way. But what you cannot say is, I'm Robbie Ash. I believe God and the American way, and that's why I'm running for governor. Yeah, but this is not that. I mean, what this is, is in my candidacy, both past and future, there were specific problems with signage and specific problems with disqualification in the election procedures. And I know this because of my own personal experience, both past and present. That's very different than, I believe in the flag and the Lord, and I'm running for position X. Certainly, and the comments that I just ran, I just lost, and one of the reasons I'm upset is because these restrictions weren't enforced. The city is not taking down the illegal yard signs in the right-of-way. That's permitted. He was absolutely—he was told in writing he was permitted to say that before he brought the suit. He chose not to do so. What if there are comments during—were there any comments that he wished to make about the election process while he was a candidate? The record is not clear on that. That is not what prompted this lawsuit. The other thing I'll say is— The disqualification procedures and signage, I thought, exactly prompted this lawsuit. He was told about—the policy restricted him from saying he was a candidate at a time when he was no longer a candidate for office. Oh, but he has stated in an affidavit that he is a future candidate. And we stipulated that he is likely to be a candidate at some point in the future. Right. He's going to run. That is what he said is likely to happen, yes. So why isn't it more meaningful to say, as a past and future candidate, I have a problem with the way the signage rules and the disqualification rules are being implemented? And that affected me before, and it will affect me in the future when I run. I do not deny that the policy at issue here operated to restrain some amount of the message he wished to convey. Then isn't narrow-tailing just to prohibit electioneering and not prohibit mentions of candidacy overall? But the point is that the way the city does that is by prohibiting just the very specific reference to the campaign itself, rather than requiring the presiding officer to make a minute-by-minute, with the risk of discretion and the risk of self-censorship, of electioneering. Council, there's no doubt that that's not a reasonable determination. I think that's why reasonableness is to your benefit and advantage here. The question is, if we're looking at narrow-tailoring, there seems to be a really easy way to narrowly tailor, and that is to prohibit exactly what you're worried about, which is someone coming in and giving a can-spain speech at the podium, and the whole thing being taken over by campaign-related activities. Well, and what I would point out in response to that, and I realize my time is out, but if I may answer the question. That is that quote that the Supreme Court has used several times, that it doesn't need to be the most reasonable, it doesn't need to be the only reasonable limitation, and also that, as Kokenda observed, the government doesn't have to permit havoc to occur before it tries to deal with it. Also, if it's campaign speech, I mean, that could be a thousand different things, and some presiding officer would have to say, oh, that's campaign speech. No, that isn't campaign speech, and there you would be, whereas this is just one specific thing they can't say, and that's why you say it's narrowly tailored, even if that is the test. Is that your argument? That is absolutely correct. That was also Judge Totenberg's conclusion. Right, that's what she says. Thank you. Thank the panel for its time. Mr. Cardinale, you've got three minutes for rebuttal. You're on mute. Sorry about that. Thank you. So this policy is not codified. I agree that it's grossly over-inclusive for the reasons stated, but it's also under-inclusive because people can still campaign. There's no policy that says that you can't say, vote for me, or you can't say, go to my website, or you can't say, you know, give my campaign a donation. Do you have any examples in the record of that having happened and the person not having been censored? Not that specifically, no. But I would say that there's no evidence of such a policy banning those comments. And the harm that the district court saw, which was that my relevant comments might cause someone else to respond and make irrelevant comments, I do have on the record that irrelevant comments are being made and no one's stopping that, and that's happening all the time. Irrelevant whether campaigning or irrelevant to the stated purpose of the form, which is matters of public concern. So if that's happening all the time, whether it's campaigning or other irrelevant comments, and I'm not causing it to happen, and no one seems to care and no one's doing anything about it, and that is an affidavits, then, you know, it's wrong to stop me from making relevant comments, which is to petition my government regarding grievances. There's a couple things I wanted to correct. One, it's not true that I was told that with me being a current candidate that I could talk about my prior experiences. I had email exchanges with Amber Robinson, the senior city attorney that are on record, and I asked for clarification regarding that. I said, well, I'm a current candidate, but I want to talk about my prior experiences, can I? And she declined to respond. Also, the other side just stated that I wasn't. Where can you tell us where that is in the record? It might, it might take a second. I'm sorry. Well, that's right. You can go on. You're limited on your time. OK, but there is somewhere where where I list all the communications with the city staff, various departments before I filed this suit. I did want to correct that. I was told about this policy at the very beginning of the election cycle, not after we were all brought together in a municipal clerk briefing. And that's where we were told. So it wasn't after it was before. As the court knows, I've identified three narrow tailoring options in my brief. And and so I urge the court to to look at those as well. And as for the earlier question about what cases I was relying on in terms of the narrow tailoring, even in the limited, actually Crowder and actually a couple of the cases that the court just mentioned were, in fact, on my list and are in my briefings. Thank you so much. Thank you.